In re John Louis OLIGSCHLAEGER, Anna Lee Oligschlaeger, Debtors.

Allen J. Leverett and Velma Sue Leverett, Plaintiffs,

v.

John Louis Oligschlaeger and Anna Lee Oligschlaeger, Defendants.

Allen J. Leverett and Velma Sue Leverett, Plaintiffs,

v.

John Louis Oligschlaeger and Anna Lee Oligschlaeger, Defendants.

Bankruptcy No. 99–41277.

Adversary Nos. 99–2020, 99–2021.

United States Bankruptcy Court, W.D. Missouri.

Sept. 30, 1999.

William C. McIlroy, Bowling Green, MO, Attorney for Plaintiffs.

Timothy C. Brady, Columbia, MO, Attorney for Debtors/Defendants.

John C. Reed, Jefferson City, MO, Attorney for Trustee.

George T. Johnson, Memphis TN, Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

These two adversary proceedings have been consolidated for trial, which was held

on September 22, 1999. The plaintiffs object to the dischargeability of a debt under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); object to the granting of a discharge under 11 U.S.C. § 727(a)(4)(C); and ask the Court to confirm that they have a secured position in real estate owned by the debtors/defendants.

### Facts

In November or December of 1998, John Oligschlaeger approached Allen Leverett and asked to borrow $20,000.00, which would be secured by twelve-and-a-half acres of land in Audrain County, Missouri. John Oligschlaeger showed Allen Leverett the land and the boundaries. Allen Leverett had the land appraised. It appraised at $36,000.00. The Leveretts agreed to loan the Oligschlaegers the $20,000.00 and take a security interest in the real estate. Unbeknownst to either Allen or Velma Leverett, the Oligschlaegers were contemplating filing for bankruptcy at the same time they were working towards closing the loan transaction. The Oligschlaegers used one attorney for the loan transaction, and a different attorney for the bankruptcy filing. The attorney who represented the Oligschlaegers in the loan transaction knew nothing about the pending bankruptcy or the actual filing of the bankruptcy petition until after the fact. The attorney who is representing the Oligschlaegers in their bankruptcy thought the loan transaction with the Leveretts had been closed in late 1998. A title search conducted prior to the closing of the loan did not reveal any problems that would prevent the completion of the transaction.

The Oligschlaegers signed their Chapter 7 bankruptcy petition on March 30, 1999. Schedule D lists Allen Leverett as a secured creditor with a claim in the amount of $20,000.00. The Leveretts gave the Oligschlaegers a check in the amount of $20,000.00 on April 1, 1999. On April 2, 1999, the Oligschlaegers executed a promissory note and deed of trust in favor of the Leveretts. Also on April 2, 1999, the Olig-

schlaegers filed their bankruptcy petition. The deed of trust was recorded on April 7, 1999.

John Oligschlaeger very candidly testified that he did not tell the Leveretts that he and his wife were going to file for bankruptcy because he knew if he did so, the Leveretts would not loan them the $20,000.00. John Oligschlaeger testified that he knew the bankruptcy attorney was going to file the bankruptcy petition during the same time the loan transaction would be closing. John Oligschlaeger stated that he paid the entire $20,000.00 to the Internal Revenue Service for unpaid taxes. The Oligschlaegers have been making the $500.00 monthly payments called for under the promissory note since the bankruptcy filing.

Following the trial, the Court took the matter under advisement and is now ready to rule. The Court determines that the Leveretts satisfied their burden to prove that the $20,000.00 debt should be nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Leveretts failed to present any evidence to support nondischargeability under 11 U.S.C. § 523(a)(6), and failed to present evidence to support a denial of discharge under 11 U.S.C. § 727(a)(4)(C). Accordingly, the Court will discuss only nondischargeability of the debt under section 523(a)(2)(A).

### Discussion

Section 523(a)(2)(A) of the Bankruptcy Code states that:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ To prevail under 11 U.S.C. § 523(a)(2)(A) the creditor must prove:

1) that the debtor made a representation;

2) that at the time the debtor knew the representation was false;

3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;

4) that the creditor justifiably relied on such representation; and

5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*In re Ophaug*, 827 F.2d 340 (8th Cir.1987), as supplemented by *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ "Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir.1995)(quoting 3 Collier on Bankruptcy ¶ 523.08[5], at 523–57 to 523–58 (footnote omitted)). "The concept of actual or positive fraud consists of something said, done, or omitted by a person with the design of perpetrating what he knows to be a cheat or deception." *In re Stentz*, 197 B.R. 966, 981 (Bankr.D.Neb.1996).

■ A debtor's silence regarding a material fact may constitute a false representation actionable under section 523(a)(2)(A). *See, e.g., In re Van Horne*, 823 F.2d 1285, 1287–88 (8th Cir.1987); *In re Larkin*, 189 B.R. 234, 239 (Bankr. D.Mass.1995); *In re Demarest*, 176 B.R. 917, 920 (Bankr.W.D.Wash.1995), *aff'd*, 124 F.3d 211, 1997 WL 599660 (9th Cir.1997);

*In re Jenkins*, 61 B.R. 30, 40 (Bankr. D.N.D.1986); *In re Maier*, 38 B.R. 231, 233 (Bankr.D.Minn.1984). For purposes of section 523(a)(2)(A), a "misrepresentation" denotes "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *In re Melancon*, 223 B.R. 300, 308–09 (Bankr.M.D.La.1998)(quoting Restatement (Second) of Torts § 525, comment (b) (1976)). In *Van Horne*, 823 F.2d at 1288 (citations omitted), the Eighth Circuit opined that "[a] borrower has the duty to divulge all material facts to the lender.... While it is certainly not practicable to require the debtor to 'bare his soul' before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction."

■ "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *In re Swan*, 156 B.R. 618, 623 n. 6 (Bankr.D.Minn.1993)(citing *In re Hunter*, 771 F.2d 1126, 1129 (8th Cir.1985)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Van Horne*, 823 F.2d at 1287. "Intent to deceive will be inferred where a debtor makes a false representation and the debtor knows or should know that the statement will induce another to act." *Duggan*, 169 B.R. at 324.

In *Field v. Mans*, the Supreme Court established that the discharge exception under section 523(a)(2)(A) requires justifiable reliance on the part of the plaintiff claiming to have been defrauded. Citing and quoting from the Restatement (Second) of Torts (1976), the Supreme Court opined:

The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have ascer-

tained the falsity of the representation had he made an investigation." *Id.,* § 540. Significantly for our purposes, the illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "walk[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage. *Id.,* § 540, Illustration 1. The point is otherwise made in a later section noting that contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort. Here a contrast between a justifiable and reasonable reliance is clear: "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.,* § 545A, Comment b. Justifiability is not without some limits, however. As a comment to § 541 explains, a person is

"required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any

experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses." *Id.,* § 541, Comment a.

A missing eye in a "sound" horse is one thing; long teeth in a "young" one, perhaps, another.

Similarly, the edition of Prosser's Law of Torts available in 1978 (as well as its current successor) states that justifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and that "[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971); *accord,* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 108, p. 752 (5th ed. 1984) (Prosser & Keeton). Prosser represents common-law authority as rejecting the reasonable person standard here, stating that "the matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Prosser, *supra,* § 108, at 717; *accord,* Prosser & Keeton, *supra,* § 108, at 751; *see also* 1 F. Harper & F. James, Law of Torts § 7.12, p. 581–583 (1956) (rejecting reasonableness standard in misrepresentation cases in favor of justifiability and stating that "by the distinct tendency of modern cases, the plaintiff is entitled to rely upon representations of fact of such a character as to require some kind of investigation or examination on his part to discover their falsity, and a defendant who has been guilty of conscious misrepresentation can not offer as a defense the plaintiff's failure to make the investi-

gation or examination to verify the same") (footnote omitted); *accord,* 2 F. Harper, F. James, & O. Gray, Law of Torts § 7.12, p. 455–458 (2d ed.1986). *Field v. Mans,* 516 U.S. at 70–72, 116 S.Ct. at 444–45.

■■■■ To succeed with their claim against the Oligschlaegers under section 523(a)(2)(A), the Leveretts were required to prove their contentions by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Normally, "exceptions to discharge [are to] be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Van Horne,* 823 F.2d at 1287. However, "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, ——, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (citations omitted). "[F]raud may be proved by direct as well as circumstantial evidence, since palpable evidence of the mental state of an individual is rarely, if ever, available." *In re Fenninger,* 49 B.R. 307, 310 (Bankr.E.D.Pa. 1985).

■■■■ Here, the Court determines that the Leveretts have proven all of the elements of their section 523(a)(2)(A) cause of action. The Oligschlaegers proceeded to close the loan transaction with the knowledge they were going to file for bankruptcy. The Oligschlaegers did not tell the Leveretts of the pending bankruptcy because they knew if they did so the Leveretts would not loan them the $20,000.00. The Oligschlaegers used two different attorneys, and kept each in the dark about highly relevant pending matters. The Court finds that the Leveretts did everything possible to protect themselves. Allen Leverett viewed the land that was used as collateral for the loan, the Leveretts had the land appraised and a title search was done prior to the closing. On April 1, 1999, the Leveretts left the $20,000.00 check with the Oligschlaegers' attorney who was handling the loan transaction. On April 2, 1999, the Oligschlaegers executed the promissory note and deed of trust.

Finally, the Leveretts have shown that they have been damaged by the Oligschlaegers' fraud. Although the Oligschlaegers have been making the monthly payments under the promissory note since the bankruptcy filing, there is nothing to guarantee that they will continue to do so. The Leveretts have proven before this Court that they presently have a valid security interest in the subject real estate, however, the Chapter 7 Trustee is gesturing that he may file an adversary proceeding to set aside the deed of trust as a postpetition transfer of estate property.

The Leveretts request an award of attorney's fees and costs. The promissory note states that the Oligschlaegers agree "to pay the costs of collecting this note, including reasonable attorney's fees if collected by an attorney or process of law." The Oligschlaegers do not contest an award of attorney's fees and costs. Costs are permitted by Federal Rule of Bankruptcy Procedure 7054. The Eighth Circuit Court of Appeals has ruled that attorney's fees provided by contract can become part of the nondischargeable debt under section 523(a)(2)(A). *See In re Alport,* 144 F.3d 1163, 1168 (8th Cir.1998); *In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985). Further, last year the United States Supreme Court in *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), affirmed the lower courts' holding that section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including an award of punitive damages assessed on account of the fraud plus attorney's fees and costs, and other relief that may exceed the value obtained by the debtor. In *Cohen* the Hoboken Rent Control Administrator determined that the debtor had been charg-

ing excessive rents and ordered him to refund $31,382.50 to the affected tenants. The debtor did not comply with this order and subsequently filed a Chapter 7 bankruptcy petition. The tenants filed an adversary proceeding contending that the debt was nondischargeable under section 523(a)(2)(A) and also sought treble damages and attorney's fees and costs under the New Jersey Consumer Fraud Act. The bankruptcy court granted the relief requested by the tenants and ruled that the debt in the total amount of $94,-147.50 plus attorney's fees and costs was nondischargeable.

The Supreme Court rejected the debtor's argument that any "debt" incurred for money, property, services or credit obtained by fraud must be limited to the value of the money, property, services or credit actually received by the debtor. The Supreme Court observed that under New Jersey law, because the debtor used fraudulent means to obtain the $31,382.50, he was subject to the imposition of treble damages plus attorney's fees and costs, and opined that:

> Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge. In this case, petitioner received rent payments from respondents for a number of years, of which $31,382.50 was obtained by fraud. His full liability traceable to that sum—$94,147.50 plus attorney's fees and costs—thus falls within the exception.
>
> . . . .
>
> As petitioner acknowledges, his gloss on § 523(a)(2)(A) would allow the debtor in [certain] situations to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole. And the portion of a creditor's recovery that exceeds the value of the money, property, etc., fraudulently obtained by the debtor—and that hence would be dischargeable under pe-

titioner's view—might include compensation not only for losses brought about by fraud but also for attorney's fees and costs of suit associated with establishing fraud.

*Cohen,* 118 S.Ct. at 1216, 1218.

██ In this case, the Leveretts have incurred attorney's fees and costs associated with establishing the Oligschlaegers' fraud. The promissory note provides for an award of reasonable attorney's fees and costs. The Court will award the Leveretts' a reasonable sum for attorney's fees and costs. The Leveretts shall file a detailed attorney's fee statement with the Court within ten days of the date of this Memorandum Opinion. Thereafter, the Oligschlaegers shall have ten days in which to file objections based upon the reasonableness of the fees and costs requested. The Court will hold a hearing if necessary to resolve the parties' differences on this issue.

### Conclusion

Based on the above discussion, the two complaints filed by Allen J. Leverett and Velma Sue Leverett are GRANTED IN PART AND DENIED IN PART. The $20,000.00 debt is NONDISCHARGEABLE under 11 U.S.C. § 523(a)(2)(A) in the Oligschlaegers' bankruptcy. Allen J. Leverett and Velma Sue Leverett have proven that as of this point in time they have a valid security interest in the subject real estate. Allen J. Leverett and Velma Sue Leverett are awarded reasonable attorney's fees and costs. In all other respects, the complaints are DENIED.

Within ten (10) days of the date of this Memorandum Opinion, Allen J. Leverett and Velma Sue Leverett shall file a detailed attorney's fee statement with the Court. Thereafter, John Louis Oligschlaeger and Anna Lee Oligschlaeger shall have ten (10) days in which to file objections based upon the reasonableness of the fees and costs requested. The Court will hold

a hearing if necessary to resolve the parties' differences on this issue.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.