In re Edward Michael OVERALL and, Judith Lynn Overall, Debtors.

Michael Wayne Ostertag, Plaintiff,

v.

Judith Lynn Overall, Debtor–Defendant.

Bankruptcy No. 99–44498–ABF.
Adversary No. 00–4005–ABF.

United States Bankruptcy Court,
W.D. Missouri.

April 28, 2000.

Margaret F. Sells, Kansas City, for Plaintiff.

Max Jevinsky, Berman, DeLeve, Kuchan & Chapman, Kansas City, for Defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

This is a dischargeability action under 11 U.S.C. § 523(a)(2)(A). Debtor–Defendant Judith Overall is the former spouse of Plaintiff Michael Ostertag. One child was born of that marriage, but that child was later adopted by Judith's current husband, Edward Overall. Plaintiff continued to pay child support once the child had been adopted, because he did not know that the adoption had taken place. Debtor received such funds, and has refused to re-

turn them to plaintiff. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).

## ISSUE PRESENTED

Does debtor's cashing of child support checks, paid by the natural father, after the child has been adopted by debtor's current husband, constitute the receipt of money by false pretenses, a false representation, or actual fraud?

## DECISION

Plaintiff has met his burden of proving that debtor's cashing of the checks constitutes the receipt of money from him either by false pretenses, or as a result of actual fraud.

## FACTUAL BACKGROUND

On August 11, 1987, the marriage of Plaintiff Michael Ostertag and Debtor–Defendant Judith Lynn Overall was dissolved by Order of the Circuit Court of Clay County, Missouri.[1] While married, the parties had one child, Dawn Nicole Ostertag, who was born November 11, 1984. Prior to the dissolution, on August 2, 1986, debtor gave birth to a second child fathered by Edward Overall, who is her current husband. The Dissolution Decree required plaintiff Michael Ostertag to pay child support as to his daughter, Dawn Nicole, only. Under the original Decree, Michael was to pay child support of $190.00 per month. In the years immediately following the dissolution, Michael at times fell into arrears on such payments, due to interruptions in his employment. Debtor was most diligent in collecting any support which was overdue. She testified that on at least five occasions she contacted the Missouri Division of Child Support Enforcement. On one occasion, Michael was jailed for failure to pay such support. According to Debtor,

1. Defendant's Exhibit A.

she was aware from her conversations with the authorities that they would take no action unless and until he was three months behind on his payments. In any event, approximately eight years ago Michael began working at Guaranty Title of Wyandotte County in a clerical position. He has been regularly employed since that time, and his child support payments have been regularly made through a garnishment procedure. On June 8, 1994, at Judith's request, his monthly child support obligation was increased to $288.66. At that time, all payments due were current.[2] Since that time, all payments were made in the month in which such payments were due.[3]

Although the reasons are unclear, the evidence is uncontradicted that Michael had no contact with his daughter after the divorce.[4] On or about February 17, 1998, Kit C. Warner, an attorney for Judith and Edward Overall, wrote a letter to Michael advising him that Edward wished to commence a legal proceeding for a stepparent adoption of Dawn. The letter stated that Judith understood that the Clay County Prosecutor's Office had or was about to commence a proceeding to increase the monthly child support obligation. The letter went on to advise Michael that if he consented to the stepparent adoption, and if a Judgment of Adoption was entered by the Court, his prospective obligation to pay child support would cease at that time.[5] Michael signed the enclosed consent form on or about February 23, 1998, and such form was filed with the Circuit Court of Clay County on or about April 8, 1998.[6] Thereafter, on or about August 13, 1998, the Overalls sent to Michael notice of a hearing to be held on August 21, 1998, concerning their Petition for Adoption.

Plaintiff, who was not represented by counsel, chose not to attend such hearing. The adoption was approved that date. There was no evidence that Judith, Edward, or their attorney notified Michael that the adoption had been approved, and he testified that he received no such notice.

Michael's employer continued to hold back $288.66 each month, and to pay those monies on to the Division of Child Support Enforcement, which dutifully paid those funds on to Judith. In addition, on July 22, 1999, due to an error in the payroll department at Michael's employer, the sum of $2,500.00 was paid to the Division. These funds were paid over to Judith as well. Upon learning of this error, Michael attempted to recover the $2,500.00 from Judith, who refused to repay those funds. That was a mistake on her part, because at that point Michael finally hired a domestic relations attorney, who learned that not only had he overpaid Judith the $2,500.00, but that the adoption had been approved by the Circuit Court on August 21, 1998. Eventually, Michael's counsel was required to file a motion for termination of child support.[7] All told, Michael paid, and Judith cashed, checks totaling $5,675.26 after the adoption had been finalized.

## LEGAL ANALYSIS

Section 523(a)(2)(A) of the Bankruptcy Code[8] reads in relevant part as follows:

Section 523. *Exceptions to Discharge*

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

---

**2.** Plaintiff's Exhibit B.

**3.** Plaintiff's Exhibit C.

**4.** The Decree provides that he shall be allowed reasonable visitation. Defendant's Exhibit A, at 4. Plaintiff testified that he was denied such visitation by the debtors.

**5.** Defendant's Exhibit E.

**6.** Defendant's Exhibit D.

**7.** Defendant's Exhibit J.

**8.** 11 U.S.C. § 523.

**150**

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

 (A) false pretenses, a false representation, or actual fraud . . .

 To succeed with his claim under Section 523(a)(2)(A), the Plaintiff must prove his contentions by a preponderance of the evidence.[9] Normally, "exceptions to discharge [are to] be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code."[10] However, "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'"[11] "[F]raud may be proved by direct as well as circumstantial evidence, since palpable evidence of the mental state of an individual is rarely, if ever, available."[12]

 As shown, Section 523(a)(2)(A) excepts from discharge debts resulting from the obtaining of money by either false pretenses, a false representation, or actual fraud. The term "actual fraud" was used for the first time in the Bankruptcy Code of 1978. Under the old Bankruptcy Act of 1898, the term "false representation" had been specifically used to refer to express misrepresentations, while the term "false pretenses" had been specifically used with reference to implied misrepresentations or any "conduct intended to create and foster a false impression."[13] As Judge Cohen more recently pointed out:

> The concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses "may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts intended to deceive." ˙Black's Law Dictionary 602 (6th ed.1990). It is a "series of events, activities, or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongly induced by a debtor to transfer property or extend credit to the debtor." *Sterna v. Paneras (In re Paneras),* 195 B.R. 395, 406 (Bankr. N.D.Ill.1996). Silence or concealment as to a material fact can constitute false pretenses. *Bank of Miami v. Quintana (In re Quintana),* 4 B.R. 508, 510 (Bankr.S.D.Fla.1980). In short, false pretenses "can be made in any of the ways in which ideas can be communicated." *First Nat. Bank of Webster v. Aetna Cas. & Sur. Co.,* 256 F.Supp. 266, 272 (D.Mass.1966).[14]

 I have little difficulty here in finding that Judith accepted child support payments, after Court approval of the adoption, under false pretenses. She testified that when payments continued to be made to her at the previously-ordered rate of $288.66 per month, and when she received proceeds from the mistaken payment of $2,500.00, she assumed that those payment where ˌperhaps for interest and penalties from the previously missed payments. Yet Michael's payments had been current at least since 1994. And, prior to that time, Judith testified that she was well aware of the process used to collect past due payments. She testified that, in the

---

9. *See, Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

10. *Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1287 (8th Cir.1987).

11. *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (citations omitted).

12. *In re Oligschlaeger,* 239 B.R. 553 (Bankr. W.D.Mo.1999) (Koger, J.), citing *In re Fenninger,* 49 B.R. 307, 310 (Bankr.E.D.Pa.1985).

13. *United American Bank v. Parker (In re Parker),* 1 B.R. 176, 179 (Bankr.E.D.Tenn.1979).

14. *In re Gilmore,* 221 B.R. 864 (Bankr. N.D.Ala.1998).

early years, after the dissolution, she had contacted the authorities on at least five occasions when his payments had been late. In one instance, she had initiated proceedings resulting in Michael being jailed for failure to timely make payments. Judith was well aware that child support had been current as of the July 12, 1994, Order raising the monthly payments, and that all payments had been made since that time. She was also aware that Michael was not present at the hearing on approval of the adoption. Her cashing of the support checks, without either returning such funds, or notifying either Michael or the Division of Child Support Enforcement that she was no longer entitled to those funds, constitutes conduct intended to create and foster a false impression. Her silence or concealment as to the fact that the child had been adopted—a material fact—constitutes false pretenses.

■ A finding that debtor received these monies under false pretenses should be sufficient to support a holding of non-dischargeability. However, as courts have noted, the distinction between false pretenses, a false representation, and actual fraud has been blurred somewhat since the addition of the "actual fraud" language in the Code.[15] Therefore, I will now consider whether Plaintiff also proved actual fraud by a preponderance of the evidence.

■ To prove actual fraud, a Plaintiff must prove that: (1) the debtor made a false representation; (2) at the time the representation was made the debtor knew it was false; (3) the debtor subjectively intended to deceive the creditor at the time she made the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged.[16]

■ I find first that the debtor did make a false representation. It is well-established that a debtor's silence as to a material fact, or when there is as an affirmative duty to speak, constitutes a representation for purposes of finding fraud under Section 523(a)(2)(A).[17] The fact that the adoption had been approved, and the Plaintiff was no longer obligated to pay child support, was certainly a material fact. And, debtor had a duty to either return the funds paid to her, or notify the Division of Child Support Enforcement, or Plaintiff, that she was no longer entitled to receive such funds because the child had been adopted by her current husband. That duty is no different than the duty of any creditor to cease garnishing the wages of a judgment debtor after the judgment has been satisfied in full.

Next, I find that the debtor knew that the continuing misrepresentation resulting from her silence was false. Judith was present at the hearing at which the adoption was approved. Her counsel had drafted the letter of February 17, 1998 to Michael, advising him that his child support obligations would cease at such time as the Court entered a Judgment of Adoption, and a copy of that letter was sent to Judith and her husband.[18] I find that she was aware of the continuing falsity of her misrepresentation.

I further find that the debtor subjectively intended to deceive Michael by cashing the checks, and by failing to notify the State or him that he was no longer obligated to pay child support. Judith was well aware that Michael was not in arrears in payments to her, and that she therefore was not entitled to the funds received by her after the adoption. Had he been in arrears, she would no doubt have been

---

15. *See, In re Eggleston,* 243 B.R. 365, 372 (Bankr.W.D.Mo.2000) (Venters, J.).

16. *AT & T Universal Card Serv. v. Ellingsworth (In re Ellingsworth),* 212 B.R. 326, 333 (Bankr.W.D.Mo.1997).

17. *Van Horne,* 823 F.2d at 1288; *In re Eggleston,* 243 B.R. 365 (Bankr.W.D.Mo.2000); *In re Lett,* 238 B.R. 167, 184 (Bankr.W.D.Mo. 1999).

18. Defendant's Exhibit E.

taking aggressive steps to collect, as she had in the past. Judith accepted funds which were obviously not due her with the intent of continuing to deceive Michael.

 Next, Plaintiff must prove that he justifiably relied upon the misrepresentation. Justifiable reliance is a less demanding standard than reasonable reliance, and requires only that creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans,* 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995). In support of her position, debtor contends that Plaintiff was aware that the adoption was in process, and that he therefore should have followed up to determine whether the process had been completed. As shown, debtor signed the consent to adoption on or about February 24, 1998.[19] On or about August 13, 1998, debtors' counsel mailed a notice to Michael of the hearing set for the following week, on August 21, 1998, to take up the Petition for Adoption. For obvious reasons, given that he had not had any contact with the child for approximately 11 years, Michael did not attend that hearing. He testified that he was not aware that that constituted the final hearing which would result in the approval of the adoption. Suffice it to say, he has a high school education, was not at that time represented by counsel, and did not understand the significance of the hearing. Judith took no steps to notify him or the Division of Child Support Enforcement of the outcome of the hearing, and certainly took no steps to release the garnishment on his paycheck. As Justice Souter wrote,

> Although the plaintiff's reliance on a misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of a reasonable man. Justification is a matter of the qualities and the characteristics of the particular plaintiff, and circumstances of the particular case rather than of the application of a community standard of conduct of all cases.[20]

Plaintiff did not appear at the adoption hearing, was not required to appear at such hearing, and did not know that the adoption process had yet been completed. He believed, based on the letter from debtors' counsel, that his child support obligations would cease when the adoption was finally approved, and that he would be notified of that fact. And, as Plaintiff's counsel pointed out at the hearing, the adoption records were sealed, and not available to him except upon Order of the Court. Due to the circumstances of the case, I find that Plaintiff should not have been required to retain counsel and file a motion for termination of child support in order to stop payments for the child that was no longer his responsibility. Plaintiff justifiably relied on debtor's misrepresentation that the child was still in fact his responsibility.

Finally, I find that Plaintiff was damaged by his overpayment in the amount of $5,675.26.

Based on the above and foregoing, having found that debtors obtained funds from the Plaintiff through both false pretenses and actual fraud, I find that Judith Overall's obligation to Plaintiff should be excepted from discharge.

Plaintiff's request an award of attorney's fees and costs. However, Plaintiff has not offered any statutory basis for the award of such fees. Therefore, the request for attorney's fees will be denied.

Based upon the above and foregoing, the Clerk of Court will be ordered to enter judgment in favor of Plaintiff Michael Ostertag and against Debtor–Defendant Judith Lynn Overall in the amount of $5,675.26, together with postjudgment in-

---

**19.** Defendant's Exhibit D.

**20.** *Field v. Mans,* 516 U.S. 59, 116 S.Ct. at 444, quoting Restatement (Second) of Torts (1976), Section 545A, Comment b.

terest as allowable by law. An Order in accordance with this Memorandum Opinion will be entered this date.