**In re Richard Hall EISINGER,
a/k/a Ike Eisinger, Debtor.**

**Richard Hall Eisinger, Plaintiff,**

v.

**Daniel F. Zito and Edith
M. Zito, Defendants.**

**Bankruptcy No. 99–19387–8G7.
Adversary No. 01–853.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 13, 2003.

Thomas Joel Chawk, Esquire, Family Legal Centers of Chawk & Associates, P.A., Lakeland, FL, for Plaintiff/Debtor.

Shirley C. Arcuri, Esquire, Shirley C. Arcuri, P.A., Tampa, FL, for Defendants.

Larry S. Hyman, Tampa, FL, Chapter 7 Trustee.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

THIS CASE came before the Court for a final evidentiary hearing in the above-referenced adversary proceeding.

The Debtor, Richard Hall Eisinger, commenced this action by filing a Complaint to Determine Dischargeability of Debt. In the Complaint, the Debtor acknowledged that he owed the Defendants, Daniel F. Zito and Edith M. Zito (the Zitos), the sum of $30,000 at the time that he filed his petition under chapter 7 of the Bankruptcy Code. The Debtor asserts, however, that he inadvertently omitted the defendants from his list of creditors when he filed his chapter 7 schedules. The Debtor requests, therefore, that the debt owed to the Zitos be discharged under § 727 of the Bankruptcy Code.

In response, the Zitos contend that the debt is not dischargeable pursuant to § 523(a)(3)(B) of the Bankruptcy Code. Specifically, the Zitos contend that (1) the debt is of a kind specified in § 523(a)(2)(A) of the Bankruptcy Code, because it was obtained by false pretenses or false representations, and (2) the debt was not listed or scheduled in time to permit them to file a timely proof of claim and a timely complaint to determine the dischargeability of the debt.

### Background

Prior to November 30, 1999, the Zitos owned certain real property located on Timber Lane Road in Lake Wales, Florida. Two homes are situated on the real property.

In approximately September of 1999, the Debtor initiated contact with the Zitos to determine whether they were interested in

selling the property. (Transcript, p. 20). The Debtor met with the Zitos several times, initially at the Zitos' home, and subsequently at the Zitos' attorney's office. (Transcript, p. 21). It appears that the preliminary negotiations resulted in a written contract for the sale of the property. (Transcript, pp. 53, 55). This original contract, which was dated on or about September 23, 1999, was never concluded.

On October 11, 1999, several weeks after the original contract, the Debtor attended an initial consultation with his bankruptcy attorney, Thomas Chawk. (Defendants' Exhibit 7, Family Legal Centers' Client Information Form). The Debtor summarized the reason for the consultation as "credit card debt." On the same day as the consultation (October 11, 1999), the Debtor signed an Employment Contract pursuant to which he employed the Family Legal Centers of Chawk & Associates, P.A. to represent him in a "debt relief/chapter 7." (Defendants' Exhibit 7, Employment Contract).

Approximately one month later, on November 10, 1999, the Zitos signed an "As Is" Sale and Purchase Contract. (Defendants' Exhibit 1). According to the Contract, the Zitos agreed to sell their property to a corporation known as Q.F.I., Inc. for the total purchase price of $300,000. Anne W. Eisinger, the Debtor's daughter, signed the Contract as Q.F.I.'s president. Anne Eisinger acknowledges, however, that Q.F.I. was never actually formed as a corporation. (Transcript, p. 54).

A sale closed on November 30, 1999. On that day, the Zitos sold the property not to Q.F.I., Inc., as set forth in the contract, but instead to Anne Eisinger individually. The closing documents that were prepared on or about November 30, 1999, include:

1. A Settlement Statement. (Defendants' Exhibit 3). The Settlement Statement reflects that the "Borrower" was Anne Eisinger, and that the total consideration for the property was $455,000.00. The sum of $250,349.90 was paid to the Zitos at closing as the "cash to the seller." (Defendants' Exhibits 3, 4).

2. A Warranty Deed. (Defendants' Exhibit 2). The Zitos executed a Warranty Deed to Anne Eisinger, as the grantee, in connection with the closing.

3. A Uniform Residential Loan Application. (Defendants' Exhibit 12). The Loan Application was signed by Anne Eisinger. Although the Application indicates that the property would be used as Anne Eisinger's "primary residence," she testified that she always intended to purchase the property as an investment. (Transcript, p. 54).

Additionally, a Promissory Note was executed on November 30, 1999, in connection with the closing. (Defendants' Exhibit 5, Transcript, p. 46). The Promissory Note was made payable to the Zitos in the amount of $30,000 and was signed by the Debtor, even though the Debtor was not the purchaser of the property. The terms of the Note are as follows:

> One payment of principal and interest is due and payable six months (6) months from the date hereof or upon sale of subject property, whichever occurs first.

The Note was not actually delivered to the Zitos until more than a week after the closing. (Transcript, p. 100).

The Debtor's chapter 7 petition was filed on December 3, 1999, three days after the closing. The chapter 7 petition and schedules are dated as of December 1, 1999, one day after the Debtor executed the Promissory Note to the Zitos.

The Debtor did not list the Zitos as creditors on his bankruptcy schedules.

The Debtor received his discharge on March 16, 2000, and the chapter 7 case was closed.

The Debtor never made any payments to the Zitos on the $30,000 Promissory Note. The Zitos filed an action against the Debtor in state court in approximately September of 2001. Thereafter, the Debtor moved to reopen his bankruptcy case, and on December 7, 2001, the chapter 7 case was reopened for the purpose of permitting the Debtor to file an amendment to his schedules and a complaint to determine dischargeability of debt.

It is clear that the Debtor did not list the debt owed to the Zitos on his bankruptcy schedules. It is undisputed that the Zitos did not have notice of the case in time to timely request a determination of dischargeability of the debt. The issue in this case, therefore, is whether the debt is of a kind that is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. The Zitos contend that the debt is nondischargeable because it was incurred on the eve of bankruptcy, and the Debtor failed to disclose the imminent filing of the chapter 7 petition at the time that he signed the Note.

## Discussion

### I. Consideration

■ The Debtor contends that the debt claimed by the Zitos is not enforceable because the Debtor did not receive any consideration in exchange for signing the Promissory Note. (Transcript, p. 8). The Debtor's contention in this regard is apparently based on the fact that the property sold by the Zitos was transferred to the Debtor's daughter, and not to the Debtor.

■ As a preliminary matter, therefore, the Court finds that the debt is supported by valid consideration. The law in Florida regarding the sufficiency of consideration

received by a third person is well-established.

It is not necessary for the consideration to pass directly to the promisor. It may move to the promisor or to a third person.

11 Fla. Jur.2d, *Contracts* § 100. See *Florida Asphalt Pavement Mfg. Co. v. Federal Reserve Bank of Atlanta,* 76 F.2d 326, 327–28 (5th Cir.1935); *Bennett v. Senn,* 106 Fla. 446, 144 So. 840, 842 (1932)("It is conceded that it was not necessary for the consideration to pass directly to such promisors.")

In this case, the Promissory Note represented a portion of the purchase price for the Zitos' property in Lake Wales. The Zitos executed a Warranty Deed for the property to Anne W. Eisinger. (Defendants' Exhibit 2). Anne W. Eisinger is the Debtor's daughter. Consequently, it is without dispute that the Zitos conveyed the real property to the Debtor's daughter in exchange for the Promissory Note and other valuable consideration.

The debt represented by the Promissory Note is supported by sufficient consideration, and is an enforceable obligation owed by the Debtor to the Zitos.

### II. Dischargeability

Section 523(a)(3)(B) of the Bankruptcy Code provides:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the

creditor to whom such debt is owed, in time to permit—

. . . . .

(B) if such debt is *of a kind specified in paragraph (2), (4), or (6) of this subsection,* timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

(Emphasis supplied).

■ In this case, the Zitos contend that the debt owed to them by the Debtor is of a kind specified in § 523(a)(2)(A) of the Bankruptcy Code. That section provides:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) *false pretenses, a false representation, or actual fraud,* other than a statement respecting the debtor's or an insider's financial condition.

(Emphasis supplied). The Eleventh Circuit Court of Appeals has explained § 523(a)(2)(A) as follows:

Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud. A creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation.

*In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir.1998). "To prevail under 11 U.S.C. § 523(a)(2)(A) the creditor must prove: 1) that the debtor made a representation; 2) that at the time the debtor knew the representation was false; 3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; 4) that the creditor justifiably relied on such representation; and 5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made." *In re Oligschlaeger,* 239 B.R. 553, 556 (Bankr.W.D.Mo.1999).

■ The Court finds that all of the elements required under § 523(a)(2)(A) of the Bankruptcy Code are present in this case.

■ 1. *False pretenses or false representation.* The Debtor incurred the debt to the Zitos under false pretenses or by making a false representation.

"A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *In re Guy,* 101 B.R. 961, 978 (Bankr. N.D.Ind.1988). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *In re Malcolm,* 145 B.R. 259, 263 (Bankr.N.D.Ill.1992)(citing *In re Dunston,* 117 B.R. 632, 639–41 (Bankr.D.Colo.1990)).

A debtor's silence regarding a material fact may constitute a false representation actionable under section 523(a)(2)(A). (Citations omitted). For purposes of section 523(a)(2)(A), a "misrepresentation" denotes "not only words spoken or written but also any other

conduct that amounts to an assertion not in accordance with the truth." (Citations omitted).

*In re Moen*, 238 B.R. 785, 791 (8th Cir. BAP 1999). "A debtor's silence regarding a material fact may constitute a false representation actionable under section 523(a)(2)(A)." *In re Oligschlaeger*, 239 B.R. 553, 556 (Bankr.W.D.Mo.1999). "A false pretense involves an implied misrepresentation or conduct intended to create or foster a false impression." *In re Zeller*, 242 B.R. 84, 87 (Bankr.S.D.Fla.1999).

In this case, the Debtor made the initial contact with the Zitos regarding the purchase of their property, and was integrally involved in negotiating the transaction. The Debtor caused the Zitos to believe that the Debtor and Anne Eisinger were purchasing the property together, and that the Debtor was the principal officer of the purchasing corporation. (Transcript, Testimony of Daniel Zito, pp. 89, 101–02.).

At the same time that the Debtor was negotiating the purchase, however, he was also consulting with his bankruptcy attorney, and in fact engaged the bankruptcy attorney to represent him in connection with his chapter 7 case. The Debtor initially consulted with the attorney on October 11, in the middle of the negotiations that began in September and continued through the signing of the "As Is" Contract on November 10, 1999, and the closing of the purchase on November 30, 1999.

The Debtor did not disclose to the Zitos that he was contemplating bankruptcy, or that he had hired a bankruptcy attorney to represent him in his bankruptcy case.

The Debtor signed the Promissory Note to the Zitos on November 30, 1999. The Debtor signed his bankruptcy schedules on December 1, 1999, the very next day following the execution of the Note. The debt owed to the Zitos was not listed on the schedules, and the schedules were not amended during the original pendency of the case.

Under these circumstances, the Court finds that the Debtor created and fostered a false impression to the Zitos that he intended to pay the debt represented by the Promissory Note. The totality of the evidence reveals that the Debtor withheld pertinent information from the Zitos, and did not intend to pay the debt at the time that he signed the Note.

Further, the Court is not persuaded by the Debtor's contention that he did not consider the debt to be his obligation. The Debtor is intelligent, articulate, educated, and has substantial business experience. He holds masters degrees in civil engineering and business (Transcript, p. 11), was a general contractor for 30 years (Transcript, p. 36), originated loans and handled bad loans for a Savings and Loan Association (Transcript, p. 36), and has worked as a consultant for companies having financial problems (Transcript, p. 36). The Court is satisfied that the Debtor understood that he was incurring a personal obligation when he signed the Promissory Note.

The Debtor created a false pretense or made a false representation for the purpose of deceiving the Zitos.

2. *Justifiable reliance.* The Zitos justifiably relied on the Debtor's false representations. The Supreme Court of the United States has concluded that the standard of reliance applicable under § 523(a)(2) of the Bankruptcy Code is "the less demanding one of justifiable reliance." *Field v. Mans*, 516 U.S. 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

In contrast to the now obsolete reasonable reliance standard, justifiable reliance does not require that the creditor prove that he acted consistent with ordi-

nary prudence and care. (Citations omitted). Stated another way, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct in all cases." (Citations omitted). A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation. (Citation omitted). This rule applies whether the investigation would have been costly and required extensive effort or could have been made without "[a]ny considerable trouble or expense." (Citation omitted).

*In re Chivers*, 275 B.R. 606, 622 (Bankr. D.Utah 2002). "Reliance under § 523(a)(2)(A) must be justifiable under the circumstances, and is gauged upon 'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Wiggins*, 250 B.R. 131, 134 (Bankr. M.D.Fla.2000).

 In this case, it appears undisputed that the Zitos did not make any specific inquiry as to the Debtor's financial condition at the time that he signed the Note.

Mr. Zito testified, however, that he had no extensive experience with buying and selling real estate. (Transcript, p. 90). Consequently, Mr. Zito hired an attorney to assist him with the transaction, and the attorney reviewed the documents when they were faxed to him during the closing. (Transcript, pp. 90–91).

Additionally, Mr. Zito testified that the Debtor led him to believe that the Debtor was the pastor of a church school, and that he was operating a real estate company. (Transcript, p. 89).

[H]e led on that he was the—like I said, the head master, a pastor in the church school, that he was the head of the company and that when he answered the phone—he had a recording on his phone that said, 'Hi, I'm Ike, I buy houses.' Not Anne buys houses. 'I'm Ike, I buy houses.' And he came across that he was the head entity, the head nut out of the whole thing.

(Transcript, p. 102). As indicated above, the contract to purchase the property reflected the buyer as a corporation known as Q.F.I., Inc. Because of the Debtor's initiative and involvement in the transaction, Mr. Zito understood the Debtor to be a representative of the company with authority to sign the Note. (Transcript, p. 109).

Under these circumstances, the Court finds that the Zitos' reliance on the Debtor's representations were justifiable, and that the Zitos justifiably believed that the Debtor had the intent and ability to repay the obligation evidenced by the Note.

The debt represented by the Note dated November 30, 1999, was a debt obtained by false pretenses or false representations within the meaning of § 523(a)(2)(A) of the Bankruptcy Code.

## Conclusion

The debt owed by the Debtor to the Zitos is nondischargeable pursuant to § 523(a)(3)(B) of the Bankruptcy Code. The debt was not listed by the Debtor on his chapter 7 schedules in time to permit the Zitos to file a claim or complaint to determine its dischargeability. Additionally, the debt was obtained by false pretenses or a false representation, and therefore is of a kind specified in § 523(a)(2)(A) of the Bankruptcy Code. Consequently, the debt satisfies all of the elements for nondischargeability set forth in § 523(a)(3)(B).

Accordingly:

**IT IS ORDERED** that:

1. The debt owed by the Debtor, Richard Hall Eisinger, to the Defendants, Daniel F. Zito and Edith M. Zito, as evidenced by the Promissory Note dated November 30, 1999, in the original principal amount of $30,000, is determined to be nondischargeable pursuant to § 523(a)(3)(B) of the Bankruptcy Code.

2. A separate Final Judgment will be entered consistent with this Opinion.